You can pronounce your name for us, if you would, please. No problem, Judge Smith. Thank you, and may it please the Court, I'm Evan Howes, and I'm here on behalf of David Villegas. Your Honors, Mr. Villegas didn't get a chance to say anything to mitigate his federal sentence before the District Court imposed it. Everyone agrees that this is a clear and obvious error, and everyone agrees that it affected Mr. Villegas' substantial rights, which is to say that there's a reasonable chance that if he had gotten to speak, his sentence could be lower. The only question is whether this Court will exercise its Rule 52b, Discretion, to correct this plain and prejudicial error. Now, it is true that this Court's test for determining plain error's fourth discretion prong in the allocution context is at odds with the majority of the federal courts of appeals, but my goal here today is to convince this Court that it doesn't need to worry about that, because even under this Court's standard, this is a case that merits reversal. Under our precedent, we do remand for resentencing. You do remand for resentencing, Judge Elrod, and that's exactly what I'm asking you to do in this case. And so we're bound by that, regardless of what other circuits do. Absolutely, and I'm not suggesting otherwise. It's just I did want to note the fact that I had made the alternative argument in our briefing, but I am going to focus here today on our contention, which is that we qualify under this Court's well-tread test for allocution errors. Now, in a case— Yes, Judge Elrod. It would have been helpful, because it was kind of going through it all as a plea and a sentence, and you could see how any district court who's kind of on a roll and thinks they have a rhythm could miss this. I mean, it's a requirement, but it would have been helpful had that been pointed out at the time. No doubt. There's no doubt. There's no indication the Court was trying to rush and be hostile or something. Not in any way. I'm not here to disparage Judge Hughes in any way. I'm not here, as we've noted many times, plain error is not a grading system for district courts, but Rule 11 and Rule 32 do still apply at these combined rearrangement and sentencing hearings. And so, absolutely, if Dennis Hester is a fine lawyer in our office, it would have been preferable if he had made the objection and gotten this out of the way, because— And your office knows that. Absolutely. I'm not trying to lay behind the log. Judge Elrod, I can assure you that we are not in any hurry to come before this Court on plain error review in any case, especially in a case in allocution. And you have to remember, there's gravity in these situations. Mr. Villegas, even if we're right, still has to go back and convince Judge Hughes to do a lower sentence when Judge Hughes has already given a sentence, right? And so, it is not an—I mean, it's not the preferred position. We'd rather him get these statements out of the way in the district court, but that didn't happen here, and so that's why we're here. So I'll turn to this Court's test and why we satisfy it. The crucial component of that test in a case like this one, where you haven't had the opportunity to allocute before, is the defendant's ability to point to something on appeal that would mitigate the sentence and that either wasn't discussed at all at sentencing or that adds a new dimension to the things that counsel did discuss. So in cases like Avia Cortez, it was the defendant's strategy to address his alcohol problems and his intent to remain in Mexico with his wife and the plan to do that. In Palacios, it was a drug case. The defendant, who had been an attorney before, detailed his professional accomplishments. He talked about his family ties, his charitable work. This Court reversed. That was an objective basis to say that what the defendant said could move the district court. And then in Figuerea Coelho, I butchered that name. I apologize that the defendant discussed how he struggled with alcohol and that he would have addressed these problems and how he would have stayed in Honduras. The common thread in each one of those cases is that what the defendant offered went beyond what counsel had offered at sentencing and it added detail, expression, and expansion in this Court's words to the defendant's plea for a lower sentence. And that's exactly what we have here. We've pointed to numerous things in our briefing that Mr. Villegas would say that addressed the district court's concerns and could mitigate Judge Hughes' concerns about his prior alcohol offenses, about the district court's perception that he had been abusing or not abusing but taking advantage of his family's generosity through the years and resulting concern that he might come back to the United States because that was overall the thing that the district judge was most worried about in this case. And so, I guess I wanted to point to two important things about the stuff that we've put forward on appeal that should motivate this Court to want to reverse. The first is the things that we've said not only go beyond what Mr. Hester said in the trial court and on Mr. Villegas' behalf, but there are things that are uniquely within Mr. Villegas' ability to convey, right? Only he can convey the extent to which alcoholism affected his life. Only he can sincerely convey the steps he took to combat that, the reasons that he was able to stay off of it, the reasons why he relapsed. Only he can convey the extent and sincerity of his actual loving relationship with his family in a way that might be credible to the district court. And so, those are exactly the type of things that add that quantity and quality, as this Court put it in Palacios, or the detail, expression, and expansion that meet this Court's test. And the other thing that I wanted to point out is that the things that we've said are directly responsive to the concerns that Judge Hughes expressed at the hearing, right? And that's not a prerequisite for reversal. In Palacios, the defendant's statements didn't directly rebut the things that the district court had said at the sentencing hearing, but in several cases, including Figueroa Coelho and including United States v. Aguirre Romero, this Court has emphasized that the things that the defendant had proffered on appeal that he could have said were responsive to the chief concern, and that is exactly what we have here. The things we pointed to are things that could directly address and maybe cause Judge Hughes to reevaluate his sentencing decision. So, I think we have done everything that's required under this Court's precedent in order to trigger reversal here. Counsel, I realize that it's your alternative argument, but if I might just—I'm curious about your understanding of the precedent in the country on this question. How do you our presumption on the third prong that we're required to apply in the Tenth Circuit's new en banc case that, as I read it, says that the denial of allocution is ordinarily sufficient in the usual case? I mean, that strikes me as two different ways of saying the same thing, but I take it you have a more nuanced view of it. Judge Oldham, our view is a bit more nuanced, only to the extent that the formal presumption that this Court and other courts have adopted operates as a formal presumption, and the idea that that shifts the burden. The thing that the Tenth Circuit and Bustamante Conchas was careful to explain is that what we think, in light of Melina Martinez and Rosales Morel, is the better way to discuss the fact that we are ordinarily going to send the case back or find that a denial of allocution is prejudicial is to look at it as the fact that the denial has happened is itself enough to meet the defendant's burden to show a probable effect on the sentencing decision, which is what you need to demonstrate the third prong, right? And so you don't need necessarily a formal presumption, but there's nothing wrong with the formal presumption. I'm certainly not asking you to overrule it because it works in my favor in this case, but that is the difference. And then I think what the Tenth Circuit did on the fourth prong is it went forward and applied the same reasoning onto the fourth prong. I do think it's important to note while we're on the subject, one of the things that makes sense is I think this Court's focus in its cases on the hypothetical statement that the defendant gives, like I've given in our appellate briefing, is something that really should—is more appropriately addressed on the third prong because it goes to the outcome. It goes onto the effect on the district court's reasoning. The fourth prong is dealing with the pillars of fourth prong, fairness, integrity, and public reputation. And when you're denying a defendant who you've already got to the point where you think that his words could reasonably have changed the district court's mind, the opportunity to say those words, it does affect, it does implicate fairness and integrity and public reputation of the proceedings because as the Tenth Circuit noted in that case and many other courts including the Supreme Court have noticed, it's not just an allocution's effect on a sentencing judge that's relevant in these situations, it's the fact that the defendants get to participate in the sentencing process. One of the most grave things that our government does to an individual is put them behind bars and take away their liberty. And so allowing them to say their piece is—performs a—has a value in and of itself that's outside of whether or not that ultimately affects the district court's decision. And so that's another thing that we think weighs in our favor in this case. And I guess just briefly, I will— Counsel, if I can just pause you real quick on that one. Of course. Because I totally understand where you are on prejudice in the third prong. That makes perfect sense to me. I'm curious though how then the third and fourth prongs don't immediately collapse into each other. If the reason to exercise judicial discretion at the fourth prong is the denial of prejudice—I'm sorry, the existence of prejudice at the third prong, then there really are just—it's just one question, not two. Well, and I think that does—Judge Oldham, I understand the instinct there and I do think that's kind of what I was getting at there in the sense that it is true that the prejudice that you find on third prong does impact the fourth prong determination. Certainly it's something else. There's that effect on fairness, integrity, and public reputation. I think one thing I could point you to is the D.C. Circuit's opinion in the United States versus Abney. The court there noted in talking about this dynamic between third and fourth prong that the defendants—that even where we remand and a defendant doesn't get a new sentence, he gets the same sentence, that still serves the function of allowing that participation in the judicial process. The defendant has had the ability to say their piece, and so that facilitates the fairness, integrity, and public reputation of the proceedings in a way that's different from the prejudice that you found on the third prong. So, I mean, it is true that they're similar, and it is hard for me to think of a hypothetical I've tried for the type of countervailing factor that would exist to deny fourth prong even where third prong is met, but I think that that is a function of how serious of an injury it is to denial pre-sentence allocution to a federal criminal defendant and the reason why we err on the side of let them have their say. And if they have their say, then that's it. And I think that's right. I don't want to belabor the court's time or extend any on. I just would like to briefly address some of the arguments the government's made in response. The main argument that the government has put forward as to why you shouldn't reverse here is that basically, even though it accepts that there's a reasonable probability that there's a chance that Mr. Villegas' words would change the outcome on remand, the fact that defense counsel expressed or did touch on some of the topics we've covered in a general fashion and then the fact that the district court rejected counsel's mitigating arguments means that the court shouldn't reverse. But it's a lot different to say, he knows not to keep coming versus the person saying, I came to see my daughter, but I'm not going to do that anymore because I've learned my lesson and I have other ties to the community back in my homeland. That's a different, it's a different degree of analysis. I guess that's a friendly question. Yes, it is. And I couldn't have said it better. In fact, that is the point I was about to make is that the difference is the focus of this court's test is on what the defendant could say, not on what the defense counsel said on his behalf or the district court's In multiple different cases, this court has still reversed even though the district court was clearly unimpressed by the defense counsel's arguments because, as you say, Judge Elrod, that added depth and expression that comes from the things the defendant can say and of course the sincerity and credibility that comes through in facial expressions and everything else that we just can't see on a cold appellate record. And the last thing I'll leave you with is just to note that allocution does matter, and the best way that I can explain that to you is to point to several instances in which this court and other courts have reversed for allocution error, and the sentence has become lower. In United States v. Lister, the sentence went down from 80 to 70 months. The only reason the case was remanded, allocution error. Palacios, 144 down to 108. That's almost three years. In Aguirre-Romero, 71 down to 65. These are all cases where this court reversed for allocution error, and the defendant's sentence was lower. And then, of course, the best example, I think, is the 10th Circuit's decision in Bustamante-Conchas. That defendant got a 240-month sentence, which was a variance below a 292 low-end range, and then on remand, the defendant got a 216-month sentence. And I would commend to the court the sentencing transcript in that case for resentencing, because it is available on PACER. I went and looked at it, and the district court did find that the contriteness of the defendant's allocution that he was able to give mattered, and that was the basis for varying even further below. And so, those . . . we think in this case, we've met this court's standard, and if the court has no further questions . . . You've saved time for rebuttal, Mr. Howes. Thank you. Mr. Sand? May it please the court, Andrew Sand for the United States of America. Perez-Negron's allocution challenge fails under plain error prong 4. He cannot show that it, quote, seriously affects the fairness, integrity, or public reputation of judicial proceedings. This court's standard is clear. It expressly, quote, declined to adopt a blanket rule that once prejudice is found, the unpreserved allocution error invariably requires correction. Instead, it's the defendant's burden to, quote, show some objective basis that would have moved the trial court to grant a lower sentence. Furthermore . . . What do you do with the case law? The multiple examples that we have were very similar cases. Yes, Your Honor. So, I think many of the cases that Perez-Negron relies upon are distinguished. So, the main case that he discusses is Avila-Cortez, and I think that case is inapt here. In that case, the Fifth Circuit reversed for two reasons. At sentencing, the defense counsel only gave, quote, general mitigation arguments, and the district court did not acknowledge them. And second, on appeal, he provided a specific strategy to tackle his alcohol problems, and he said he would discuss specific plans that he and his wife would make to return to Mexico. I think that case is distinguished from the instant case for three main reasons. First, I would encourage this court to compare the sentencing transcript from that case. The mitigation argument went on for about one page in the sentencing transcript. In this case, it was far more robust. It went on for about five pages, and it was a robust discussion between— So, you're saying because the lawyer did a good job that he doesn't—that all the case law doesn't apply in this situation? I think it does matter that the lawyer did a good job here, and it was just a robust discussion between the lawyer— But do you acknowledge that there is a difference in whether a person can say, I show his contriteness to the court personally and pledge not to violate the law, that there is a difference in type of—that that's a different thing than the lawyer just saying, he knows and he's really sorry and he's not going to do this again. Yes, Your Honor. So, there certainly is a role for the defendant to personally allocute, but at least under this court's case law, the test is clear here. It says that on appeal for an unpreserved allocution challenge, and I would note that here, this objection, the failure to allocate was unobjected to below, and that matters. In this type of situation, on plain error prong four, the defendant bears a burden, and we are on plain error, and he bears the burden under plain error. Has our court ever accepted that argument in this context? Which argument, Your Honor? Prong four argument in the context of no allocution. Yes, Your Honor. So, the government discusses this in our brief. We point this court's attention to its decision in Chavez-Perez, and I think there are many similarities between that case and this case. In that case, at sentencing, the district court had heard a lengthy mitigation argument from defense counsel about the defendant's criminal history involving alcoholism and family circumstances and directly engaged with the defendant. And on appeal, he said he would provide, quote, much more detail about his family circumstances, his difficulties and dangers in being in Mexico, and how his substance abuse contributed to his criminal history. And this court affirmed for two main reasons. First, it held that most of those mitigation arguments were raised at sentencing, and on appeal he provides no new mitigating information. And second, it was unlikely that the district court would give a lower sentence because it gave, quote, significant if not decisive weight to the defendant's history of repetitive violent crime. And I think those two reasons apply to this case, and we discussed it in our brief. First, Perez-Negron's mitigation arguments about his family circumstances, his alcoholism, and his intent to stay in Mexico were raised at sentencing, and he provides no concrete or specific mitigating information on appeal, and that is part of the requirement here. And second, it's unlikely that the district court would give him a lower sentence because it gave significant if not decisive weight to his criminal history of DWIs while here illegally and especially his danger to the community here. Counsel, can we zoom out for a second and talk about how this doctrine works? Because I'm a little confused by how the government is briefing this. So what I heard you say is that the stuff that's raised in the brief here and the things that the defendant wanted to offer at allocution was largely touched upon, and there's no real reason to think the district court would do it differently. All of that, to my ear, goes to the third prong, which is whether he was prejudiced by the denial of his right to allocute. It doesn't go to the fourth prong, which is the exercise of judicial discretion. So can you help me understand as a doctrinal matter why we aren't talking about prong three, which I take the government to have conceded, and why we're talking about prong four? I think there are some similarities here between the inquiry for prong three and prong four. I think that that's, at the very least, that's the test that this court has laid out, distinguishing between prong three where there's a presumption if it's not a bottom-of-guidelines sentence, which we've conceded applies here because he received a 48-month sentence. The bottom-of-guidelines range was 46. And here I think at least prior courts, prior panels have said that this is the test for whether he can show that it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Your Honor, you just touched upon this. There is kind of an instinct to collapse prongs three and four together because they kind of touch upon the same type of inquiry. But at least this court's case law is clear. They've separated them out. They've said that this is the test for prong four. Well, maybe here's another way, I'm wondering, to get at it. So 61 years ago, the Supreme Court, because I realize that our precedent on this goes on both sides of it, but let's talk about the Supreme Court's cases for a second. In Green, which was decided over 61 years ago, the court said that as early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before a sentence justified reversal. And if there's anything that the average American would understand about criminal sentencing is that the defendant gets to talk before the government takes his liberty away. So that would strike me that it largely goes to prong four, and maybe the rule is that as to the judicial integrity of the proceeding, the denial of an allocution is effectively, you know, res ipsa satisfies prong four, and that really the question is do we think at prong three that sending it back would necessarily, you know, that there was prejudice because of the denial, not whether the judicial integrity has been violated by denying the defendant an opportunity to say his piece before he's remanded to the custody of the Bureau of Prisons. I think that, you know, there's some interplay here, and I think it's important to note that, you know, we are talking about plain error here. So he had – there are kind of two competing principles here, I think. You know, first, there is the allocution error, and that's an important right, though it's not a constitutional or fundamental right. And then on the other hand, there's also plain error of view. You know, he had an opportunity to object below even after the sentence was pronounced, the district court did ask whether there was anything else from either the government or defense counsel. And so there was an opportunity to raise this, and the fact that it's unpreserved, I think, is kind of, you know, why we're here. And here I think this court's ruled where there needs to be some objective basis that would have moved the district court to impose a lesser sentence. That kind of, I think, that strikes a balance between those competing principles, you know, at the prong four stage. So I think that's really what's going on. Why isn't that satisfied here, though? Because the district court was very taken with this idea that the defendant was a moocher, that he was living off of his family, his daughters, and very taken with that. And if he would have had the opportunity to opine, as the brief indicates, he would have explained that that was a misperception of the district court, and that while there had been a time with his alcoholism that he was dependent, but there were many other times where he'd actually provided for his family. And that now he did not—his daughters were taking care of themselves, and he could go back and work on this ranch. He could have gone into great detail about the ranch himself. There's a whole bunch of things he could have done to dissuade the district court of his mooching viewpoint. Yes, Your Honor. I think what's going on here, and you can see it from Perez-Negron's opening brief, is that he talks about what he would have personally explained. That's what he has to do in order to satisfy. Yes, Your Honor. But I think at least the content of that, it's already been presented to the district court below. All the facts that you just talked about, they were presented below. They were in the letters. He provided for them very well. I think that the daughter's letters, they talked about that. They talked about the ranch. They talked about the house. But not about how many years before that he provided for them. I don't think he talked about that. I think the district court was—they talked about how he had been a loving father, how he had provided. He didn't say how he provided for them in any kind of detail. Okay. Yes, Your Honor. But I think that at least the content of what would be presented in a theoretical allocution, that was already before the district court. And even in the opening brief, Perez-Negron, he basically concedes that, that these points were before the district court and the district court was unpersuaded by them. I don't think that he does concede it. I mean, in his reply brief, he goes back and says, see pages 17 to 21, and he says these are not conceded, that everything is already there. He said he could put some meat on the bones, basically. Yes, Your Honor. I think the government's position is that there was already ample meat on the bones, and the district court was just skeptical of these points, and that's— Well, he might not have been skeptical had he heard it from him. I think that is up for this court to determine. But I think our position is if you look at the sentencing transcript, the district court—many of these mitigation arguments, they were presented to the district court. The district court was very skeptical of them, and some of those statements, they were the district court expressing its views on the mitigation arguments. Clearly, it was unpersuaded by these mitigation arguments. And I think the district court made the basis for a sentence very clear that he had a criminal history of DWIs, and he endangered people. The district court talks about how he endangered his daughters, other people's daughters, everyone's daughters. So I think the district court was pretty clear on where it fell as to the sentence itself. And for many of the reasons that I talked about on how Avila Cortez is distinguished, I think, you know, here there was much more specific mitigation arguments. There was a much more robust discussion of sentencing, you know, on appeal. He does kind of talk about what points he would have expanded upon, but he provides no concrete information on what he would have raised. I think those cases are distinguished for many of the same reasons. I'm happy also to discuss the alternative issue in this case, but given that opposing counsel concedes that it is foreclosed under this court's precedence, the government's happy to rest on its briefs. All right. Thank you, Mr. Sands. Thank you, Your Honor. The government respectfully requests that this court affirm the judgment of the district court. House, you've saved time for a vote. So let me just clue you in on cases, and I've seen this lots of times before, where in the red brief the appellee places strong and repeated reliance on a particular authority, and then in the gray brief the appellant doesn't even mention it, much less make any kind of response, and so my antenna always goes up in situations like that because it makes it look as though the appellant, who has the perfect opportunity to file or apply a brief, has something to hide. So tell us why you didn't make any kind of response to Chavez-Perez, a case that was cited so often in the government's brief that it was listed as passim in the table of authorities. And, Judge Smith, that was the first point that I wanted to address here because I knew that the government relied on Chavez-Perez. In the briefing, all I can say is that I was projecting a position of strength because I think we dealt with the way that the government talks about Chavez-Perez by explaining why our case is like Palacios, why our case is like Figueroa-Coelho, and why our case is like Abia Cortez when what was present in those cases is that the defendant added something new to what was presented below. Okay, but you're an officer of the court, and particularly from the Federal Public Defender's Office. I mean, it seems to me that you have some kind of an obligation to tell the court. That's what the reply brief is for. Otherwise, we wouldn't allow a reply brief. I don't disagree, Judge Smith, and I take the criticism to heart, and I will make sure to, in the future, address cases like that. It was not an intentional, and I was not certainly trying to project that I don't have an answer to that case. Can you answer on it, please? Absolutely. There's two reasons why Chavez-Perez is distinguishable from this case. The first is that, as Mr. Sand noted, the defendant there only talked about conclusory assertions that didn't add anything new to the mitigating presentation and sentencing. Here, we've certainly added something new. In fact, I'll just point you to what our trial counsel said about the alcohol issues. He simply said, a generalized statement, that the issues were undeniable. That's all he said, and then he moved on to the other things that he wanted to talk about. Everything we've said in our briefing about the way that he would describe his alcoholism and struggles with alcoholism and his respect and true nature of love and relationship with his family isn't just different than what counsel said. It's brand new information. Counsel didn't even say it. The second thing that distinguishes this case from Chavez-Perez is that the panel there emphasized not only that the district court was focused on the defendant's criminal history, but what Mr. Sand omitted in both his briefing and argument up here is that the reason that mattered to the panel is that the things that the defendant offered on appeal were not directly responsive and did not address that concern. That's different here because, as I explained in my opening presentation, the things we've offered are directly responsive to Judge Hughes' position. That is a situation in Aguirre-Romero and Figueroa-Cuello. That factor was present. The proffered allocution was responsive to the defendant's or to the district court's concerns, but in Chavez-Perez and in, I think, the unpublished Neal case that's cited in the briefs, the defendant's proffered allocution was not responsive to the district court's concerns. That is the key difference between this case and that case, and that's why we are like Palacios and we are not like Chavez-Perez. And so the last thing— I thought in Chavez-Perez the defendant did promise that more detail would have been provided. The defendant did say that we could offer more detail, but it was in a block statement where the defendant just made, in this court's view, vague, conclusory assertions. In this case, we've given you specific details, we would say, and we've backed it up with record evidence, including the daughter's letters. Now, Mr. Sand treats the daughter's letters as if those were counsel's presentation to the court. They're not. In Figueroa-Cuello, this court explicitly held that information that's in the PSR is not outside the realm of the type of information that can qualify as the objective basis that could convince the district court if it's cited in the proffered allocution. And so I think the daughter's letters are just like that. That's information in the record that supports the things that Mr. Villegas could say in order to mitigate his sentence. And so this is a situation where we didn't have the chance to speak and we've asked this court to give Mr. Villegas that opportunity, especially in light of the fact that there's a reasonable possibility it could matter. Thank you. Thank you, Mr. Housen. Your case is under submission. Next case, Securities and Exchange Commission v. Holland.